UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOCUMENT SECURITY SYSTEMS, INC. f/k/a
NEW SKY COMMUNICATIONS, INC., as
successor-in-interest to THOMAS M.
WICKER, THOMAS M. WICKER ENTERPRISES,
INC. and DOCUMENT SECURITY CONSULTANTS,

               Plaintiffs,                  03-CV-6044

           v.                     **DECISION**
                                       **and ORDER**

ADLER TECHNOLOGIES, INC. n/k/a ADLERTECH
INTERNATIONAL, INC., ANDREW McTAGGART,
RAY MAXON and BLANKS/USA, JUDY WU a/k/a
JUDITH WU a/k/a JUDY McTAGGART and ARCIS
DIGITAL SECURITY, INC.,

               Defendants.
_____

## INTRODUCTION

Plaintiff Document Security Systems, Inc. ("DSS") f/k/a New Sky Communications, Inc., as successor-in-interest to Thomas Wicker, Thomas M. Wicker Enterprises, Inc. and Document Security Consultants ("DSC") (collectively "plaintiff"), owner of patented document security technology used to thwart counterfeiting and forgery, brings this action against defendants Adler Technologies, Inc. ("Adler") n/k/a Adlertech International, Inc., Andrew McTaggart ("McTaggart"), Ray Maxon ("Maxon"), Blanks/USA, Judy Wu a/k/a Judy McTaggart ("Wu") and Arcis Digital Security, Inc. ("Arcis") (collectively "defendants") seeking relief in the form of

damages for breach of contract and injunctive and declaratory relief arising out of the alleged wrongful use and retention of plaintiff's technologies.

Before the Court are two motions. On July 19, 2007, plaintiff filed a motion to strike defendants' First Amended Answer to the Third Amended Complaint. Subsequently, on August 30, 2007, defendants cross-moved to amend and supplement their pleadings. For the reasons set forth below, the plaintiff's motion to strike is granted in part and denied in part as moot, and defendants' motion to amend the pleadings is granted in part and denied in part.

## **BACKGROUND**

### A.    **Procedural Background**

On January 31, 2003, plaintiff filed its complaint against defendants. In May of 2003, the original defendants answered the complaint and asserted counterclaims. On May 12, 2003, original defendants filed a third party complaint and in June 2003 third party plaintiffs filed a motion to dismiss the defendants' third party complaint. Defendants then filed a cross-motion on July 16, 2003 for joiner of third party defendants as counterclaim defendants. On July 28, 2003, the Court denied the cross-motion for joinder of third party defendants and granted third party

defendants' motion to dismiss. In August 2004, plaintiff's filed an initial motion to compel disclosure and the Court granted plaintiff's motion. Plaintiff filed an amended and supplemental complaint to add defendants Blanks/USA and Ray Maxon as additional defendants in May 2005. The additional defendants answered the amended complaint on July 15, 2005. In August 2005, Maxon filed an amended answer to the amended complaint. The first depositions in this action were conducted in June 2006. On August 10, 2006, plaintiff filed a motion for leave to file and serve an amended complaint and for issuance of a supplemental summons. In February 2007, the Court granted plaintiff leave to file a Second Amended Complaint permitting plaintiff to add additional defendants Judy Wu and Arcis and the amended complaint was filed on February 6, 2007.

Throughout this period, the parties were engaged in discovery and the Court issued several scheduling orders. Depositions of parties, their representatives and third party witnesses were conducted locally and in Minnesota in February, March and June 2007.[1] On May 21, 2007, the Court issued a Stipulated Order permitting leave to serve a Third Amended Complaint and to amend

---

[1]Plaintiff's CEO Patrick White's deposition has begun but remains to be completed and the depositions of other representatives of plaintiff and defendants have been identified by both sides as needing to be completed. The parties have also been producing documents but there is still document discovery outstanding.

the current scheduling order. The scheduling order provided that all factual discovery was to be completed by August 6, 2007, with any motion directed to discovery due thirty days prior to the deadline. Defendants filed their Answer in response to the Third Amended Complaint on June 18, 2007. On July 9, 2007, plaintiff filed replies to the Answers of the McTaggart defendants and Maxon.

Following the filing and service of plaintiff's replies to the Answers to the Third Amended Complaint of the McTaggart defendants and Maxon, all defendants filed First Amended Answers to the Third Amended Complaint. Upon receipt of the pleadings, plaintiff's counsel informed counsel for defendants that they were not entitled to an amendment as of right as to the Amended Answers as plaintiff had already served its responsive pleadings to defendants' answers to the Third Amended Complaint. In response, defense counsel argued that the defendants were entitled to file the Amended Answers as of right and without leave of Court. According to defendants, defense counsel submitted defendants' proposed third amended counterclaims to plaintiff's counsel for consideration on June 19, 2007. However, plaintiff was not willing to agree to a stipulated Order permitting the counterclaims to be amended. Because plaintiff was unwilling to consent to amendment of the counterclaims, defendants decided to

4

amend their affirmative defenses contained in their answers by including a majority of the factual allegations that are contained in the proposed amended counterclaims.

As a result of the pending motions relating to the pleadings, Magistrate Judge Feldman issued a Stipulated Order staying the Scheduling Order that was in effect and, which provided that all factual discovery was to be completed by August 6, 2007, until the motions related to the pleadings are resolved.

**B.    Maxon's Counterclaims[2]**

Maxon proposes three additional counterclaims and seeks to add new defendants to the counterclaims. See Proposed Counterclaims 13 to 17. Maxon seeks to add as counterclaim defendants, Thomas Wicker, Thomas M. Wicker Enterprises, Inc. ("Wicker Enterprises"), Christine Wicker and Kenneth Wicker, as Executors of the Estate of Ralph Wicker ("Estate of Wicker"). In Maxon's Thirteenth Counterclaim, he alleges that in addition to DSS, Thomas Wicker, Wicker Enterprises and the Estate of Wicker are liable to him for breach of contract with respect to the sale or licensing of the '285 Patent. This relates to the "Maxon Agreement" between Wicker

---

[2]The Court will refer to the various allegations in the proposed counterclaims since they are very similar to the factual allegations, which were made part of the affirmative defenses in the amended answers filed by defendants on July 9, 2007, and which are the subject of plaintiff's motion to strike.

Enterprises and Maxon dated October 1998. In his proposed
Fourteenth Counterclaim, Maxon seeks to add Thomas Wicker, Wicker
Enterprises and the Estate of Wicker as well as raise a new theory
of liability, which is the breach of duty of good faith and fair
dealing. In the Fifteenth Counterclaim, Maxon seeks to join
additional defendants Thomas Wicker, Wicker Enterprises and Estate
of Wicker to his counterclaim.

In Maxon's proposed Sixteenth Counterclaim, he seeks to add as
a new theory of liability the alleged "fraudulent conveyance" of
the '285 Patent as against not only DSS but also Thomas Wicker,
Wicker Enterprises and the Estate of Wicker. According to
defendants, during the course of its investigation relating to the
'285 Patent, it was discovered that Wicker Enterprises and the
Estate of Wicker caused an assignment to be filed in the United
States Patent & Trademark Office ("USPTO"), which purported to
assign Wicker Enterprises' interest in the '285 Patent to the
Estate of Wicker. The recording date of November 25, 2002 was
several months after the July 2002 assignment of all of Wicker
Enterprises' shares of stock to plaintiff, but only a few weeks
after Maxon's inquiry. Defendants claim however, that the '285
Patent assignment filed on or about November 25, 2002 was backdated
and reflected a December 10, 2001 date. Further, defendants claim

that the '285 Patent assignment was not notarized. In his proposed Seventeenth Counterclaim, Maxon seeks a judgment declaring ownership of the '285 Patent as against not only DSS, but also Thomas Wicker, Wicker Enterprises and the Estate of Wicker.

## C.     Supplemental Counterclaim Relating to Defamation

In defendants' proposed Eighteenth Counterclaim, defendants Adler, Arcis, McTaggart and Wu seek to add a counterclaim against both plaintiff and proposed additional counterclaim defendant Michael Caton (Plaintiff's Vice President of Implementation) ("Caton"), for defamation arising out of alleged statements made by Caton on December 29, 2006. Defendants contend that this counterclaim is supplemental pursuant to Fed. R. Civ. P. 15(d) and 13(e) because the events occurred since the counterclaims were originally plead against plaintiff. According to defendants, on December 29, 2006, Caton posted false statements on an internet web log entitled, "Philip Brook Patent Infringement Updates."[3] Defendants claim the statements were intended to harm the character

---

[3]The December 2006 statements included, among other things, the following statements "As for Adlertech maybe people should just look at what the owners of this company have there [sic] experience in up to the point that they meet the Wickers and how all of a sudden they know all there is to know about printing and took people in the field to learn many many years and seem to just be puttig [sic] out products which match or are similar to DSSI. ALL I will say is the product which they are selling (ODT) patented technology which I help[sic] develop and was suppose[sic] to be compensated[sic] for and never was is what they are sell [sic]. If I am correct if all the inventors are not named on a patent then the patent can be ruled invalid and I have a very good case if that is to be pushed. I think the Post above did not research very well before they posted." See Exhibit C to Paul Leclair's Declaration, ¶ 102, p. 84

of Adler and its owners, McTaggart and Wu and imply that they misappropriated technology, which are not true and are defamatory.

### D.     Patent Invalidity and Unenforceability Counterclaims

The proposed Nineteenth, Twentieth and Twenty-First Counterclaims against plaintiff seek declaratory judgments that United States patents 5,018,767 (the "'767 patent"), 5,707,083 (the "'083 patent") and 5,735,547 (the "'547 patent")[4] are not infringed by the defendants, are invalid for a variety of reasons and/or are unenforceable due to the alleged failure of the inventors to disclose to the USPTO information material to patentability of such patents. Moreover, Adler seeks to join as an individual counterclaim defendant Thomas Wicker to a breach of contract claim regarding an alleged agreement between Adler and Thomas Wicker.

In defendants' prosed Nineteenth Counterclaim, they seek a judgment of non-infringement and absence of liability for infringement with respect to all of the said patents. Defendants claim that they have not infringed directly or indirectly, or contributed to the infringement of others of the said patents. In

---

[4]Defendants originally sought declaratory judgment for United States patent 5,193,853 (the "'853 patent") together with the rest of the patents mentioned above. However, due to plaintiff's offer of proof that the '853 patent expired in 2001 due to maintenance fees not being paid, defendants are modifying the relief they are requesting. In the event defendants are granted leave to amend their pleadings, the Nineteenth, Twentieth and Twenty-First Counterclaims will not seek relief with respect to the '853 patent and defendants will revise their pleadings accordingly.

their proposed Twentieth Counterclaim, all defendants seek a declaration that all of the subject patents are invalid for failure to comply with one or more of 35 U.S.C. §§ 102 and 103.[5] The Twentieth Counterclaim also seeks to invalidate all of the subject patents for alleged failure to comply with 35 U.S.C. § 112.[6] Adler distributes and supplies anti-counterfeit currency devices. In the proposed Twenty-First Counterclaim, all defendants seek a declaration that none of the subject patents are enforceable due to alleged inequitable conduct during the prosecution of said patents before the USPTO in that plaintiff or its predecessors allegedly and knowingly failed to disclose information material to patentability, intentionally failed to disclose the best mode, and intentionally failed to provide an enabling disclosure.

### E.   Prejudice Argument

Defendants argue that plaintiff will not suffer any unfair prejudice since discovery in this action is not yet complete,

---

[5]Defendants seek to charge that all of the subject patents are invalid under Section 102 in that the inventions were known or used by others in this country, or patented or described in a printed publication in this country or another country, or patented or described in a printed publication in this or another country before the inventions thereof for the patents, or were patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for the subject patents in the United States. With respect to Section 103, defendants' proposed Twentieth Counterclaim asserts that each of the subject patents is invalid because the subject matter sought to be patented by each claim outlined in each patent would have been obvious to persons having ordinary skill in the art to which the subject matter pertains.

[6]The grounds for invalidity under § 112 is that they are "indefinite, not supported by an enabling disclosure or disclosure of the best mode." See Defendant's Proposed Amended Complaint at p. 155.

counsel for the parties are still contemplating additional important depositions of plaintiff's CEO, Patrick White, Thomas Wicker, and representatives of defendants. In addition, defendants contend that the deadline for discovery has not expired since the scheduling order was suspended pending the outcome of these pending motions. Further, defendants argue that the matters regarding plaintiff and proposed counterclaim defendant Caton's defamation happened as recently as December 2006 and the allegations of infringement occurred during the summer of 2006 and at a recent deposition of David Wicker in March 2007. Moreover, defendants assert that plaintiff will not suffer unfair prejudice because plaintiff's own claims and the presently existing counterclaims involve the same patents, which are the subject of the proposed counterclaims. According to defendants, none of the proposed counterclaims involve a subject matter that is wholly new or unrelated to the existing counterclaims.

Plaintiff contends that the prosecution or defense of patent infringement and/or unenforceability litigation is extremely time-consuming and labor intensive. As such, plaintiff asserts that if the Court grants the proposed amendments, whole new vistas of discovery will be opened relating to the interpretation of the claims laid out in the subject patents, all of the proceedings,

which led to the issuance of those patents, the knowledge of the inventors concerning prior art and "best mode" at the time that the applications for these patents were made and during the course of the prosecution of the same, and deposition of fact witnesses and experts that were not contemplated for the last four and a half years will become necessary. In addition, it will become necessary to re-depose certain of the witnesses who have thus far testified, including defendants McTaggart and Wu as well as David Wicker. Moreover, the newly joined parties will be entitled to conduct their own discovery, duplicating to a great extent discovery and depositions that plaintiff has worked hard at completing for the last four years. Further, despite all anticipated best efforts, the addition of the proposed counterclaims and joinder of four new parties will undoubtedly delay the final disposition of this case for many more years. Plaintiff also argues that while it is difficult to estimate precisely the additional costs that will be expended in this litigation, should the proposed amended pleadings be granted, based on plaintiff's counsel's 34 years of experience in handling complex, commercial and business litigation and given the necessity of bringing technical experts and patent counsel, it is estimated that roughly an additional one million dollars or more will be incurred by the plaintiff in the defense of the proposed

counterclaims.

## DISCUSSION

### I.   Defendants' Motion For Leave To Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that: "leave to amend shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "If the proposed amendment alleges facts or circumstances which may be a proper subject of relief, the suitor, in the absence of sufficient reasons for denying him this opportunity, should have a chance to test his claim on the merits." See Middle Atlantic Util. Co. v. S.M.W. Dev. Corp., 392 F.2d 380, 384 (2d Cir.1968). Accordingly, the purpose of Rule 15(a) is to encourage disposition of litigation on the merits, rather than on procedural technicalities. See Sanders v. Thrall Car Mfg. Co., 582 F.Supp. 945, 952 (S.D.N.Y. 1983), aff'd, 730 F.2d 910 (2d Cir. 1984). However, where there is evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party or futility, leave to amend shall not be granted. See Monahan v. New York City Dept. of Corrections, 214 F.3d 275, 283 (2d Cir.2000). Thus, the rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the non-movant of prejudice or bad faith. See State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir.

12

1981).

**A.    Maxon's Counterclaims**

Defendants contend that Maxon's counterclaims are directly related to the claims that have been asserted against him by plaintiff in the Third Amended Complaint. Further, defendants assert that plaintiff's claims against Maxon are based on the October 21, 1998 written agreement between Thomas Wicker and Maxon. Plaintiff claims that Maxon did not pay any of the royalties he was obligated to pay Wicker Enterprises and that plaintiff was assigned Wicker Enterprises' right to receive royalties under the agreement. Defendants argue that Maxon's existing and proposed counterclaims are based on the same agreement.[7] Further, Maxon's proposed additional counterclaims seek to add defendants because plaintiff claims that its July 21, 2002 agreement with Thomas Wicker was not a transfer to plaintiff of the obligations under the October 21, 1998 agreement. According to defendants, the October 1998 agreement makes clear that Maxon is entitled to receive not only royalties from the sale of products containing the '285 Patent technology,

---

[7]According to Defendants, pursuant to the October 21, 1998 Agreement, Wicker Enterprises agreed to pay royalties of 49.5% of "any monies received for the use of ..." the '285 Patent. Moreover, defendants claim that pursuant to a July 31, 2002 agreement, Thomas Wicker assigned all of his rights, title and interest under the October 21, 1998 agreement to plaintiff, and Thomas Wicker transferred all of his shares of stock in Wicker Enterprises to plaintiff. Accordingly, defendants claim that Maxon asserted his original counterclaims for royalties against plaintiff. Those counterclaims and allegations currently exist. See Ex. C to Leclair's Decl., ¶¶ 89-91, p. 82; ¶¶ 458-460, 466, pp. 151, 53.

but also from the sale of the ownership of the '285 Patent.

Plaintiff claims that Maxon's deposition was taken on June 15, 2006 and based on the testimony and documents authored by Maxon himself, he had actual notice and knowledge of all of the alleged facts upon which his current proposed amendments are based and has had such facts at his disposal since not later than December 2004.[8] At his deposition, Maxon identified a letter, which he had sent to the DSS Board on December 13, 2004. In that letter, Maxon provided the Board with the exchange of e-mails between himself, Patrick White and Thomas Wicker and reviewed and provided the Board with a certified copy of the '285 Patent and assignments. He notes that the '285 Patent assignment was not recorded with the USPTO until November 25, 2002, after the consummation of the July 2002 DSS acquisition transaction, and some five days after the exchange of e-mails on November 20 and 21, 2002. Maxon further asserts that he has a claim to the "1,000,000 shares vested to Thomas M. Wicker"

---

[8]Plaintiffs contend that during the course of his deposition, Maxon identified a string of e-mails between himself, Thomas Wicker and Patrick White of DSS occurring between November 8 and November 21, 2002. In the November 8 e-mail Maxon asked directly of Thomas Wicker and Wicker Enterprises as whether Maxon was owed money regarding the July 2002 acquisition transaction between DSS, Thomas Wicker and Wicker Enterprises. On November 20, 2002, Patrick White sent Maxon an e-mail informing him that the '285 patent was not included in the July 2002 acquisition transaction and "is still owed by Thomas M. Wicker (individual) 75% and Ray Maxon (25%)." On November 21, 2002, Maxon responded by asking to "please clarify also if you are and from what date you are accepting liabilities from TMWE. Does your agreement and email mean you accept liability back to October 21, 1998? ... Tom has never paid me money and I have significant expense involved with developing business on Tom's behalf." Lastly, Patrick White replied on November 21, 2002 by advising Maxon "[I]f you have not already, I strongly urge you to contact an attorney."

and that he has "some interest in the shares."

Plaintiff claims that Thomas Wicker, Wicker Enterprises or the Estate of Wicker have not been parties to this action or have not participated in the prosecution of this action or the defense of counterclaims to date. According to plaintiff, each of these parties, if added as defendants on counterclaims, will need separate and independent legal representation in this action. Further, plaintiff claims that none of the discovery, including depositions taken to date, would be binding upon these additional parties, who would have the right to seek their own discovery, including the taking of depositions from persons who have already testified. Plaintiff claims that the dispute between DSS and Maxon as set forth in the action can be fully and finally adjudicated by the Court without the need to join Thomas Wicker, Wicker Enterprises and the Estate of Wicker in this action.

Although Maxon's counterclaims may result in a delay because of additional discovery and depositions that will need to be taken, it will not unduly prejudice the plaintiff. See Rachman Bag Co. v Liberty Mutual Ins. Co., 46 F.3d 230, 235 (2d Cir. 1995) (Delay alone unaccompanied by any apparent or declared reason does not usually warrant denial of leave to amend) (citing State Teachers, 654 F.2d at 856); see also Howey v. United States, 481 F.2d 1187,

1190-91 (9th Cir. 1973) (Absent a showing of bad faith or undue prejudice, mere delay does not provide a basis for a district court to deny the right to amend). As an initial matter, a revised scheduling order may be issued taking into consideration that the newly added parties have the right to seek their own discovery, including the taking of depositions from persons who have already testified regarding the narrow issue of Maxon's counterclaims. Plaintiff's argument that they are prejudiced because of the time, effort and money that will be expended in litigating this case do not arise to the "substantial prejudice" contemplated by the Second Circuit in Strauss v. Douglas Aircraft Co., 404 F.2d 1152, 1157-58 (2d Cir. 1968), or even the lesser prejudice required in Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983).

Further, Maxon's existing and proposed counterclaims are related to the claims that have been asserted against him by plaintiff. The proposed counterclaims seek a declaratory judgment determining which parties are obligated to pay Maxon royalties under the October 21, 1998 agreement. In addition, the proposed counterclaims seek to collect royalties from the responsible party, and properly allege fraudulent conveyance for the 2002 transaction between plaintiff and the various counterclaim defendants as it relates to the assignment of the '285 Patent that allegedly avoids

16

liability on the part of plaintiff. Therefore, Maxon's proposed counterclaims are permitted and the proposed counterclaim defendants added pursuant to Fed. R. Civ. P. 15 and 13.[9]

### B.   Defamation Claims

The proposed new counterclaim on behalf of Adler, McTaggart, Arcis and Wu against Caton, which relate to defamation concern the publication of alleged defamatory materials by Caton on December 29, 2006. Plaintiff argues that since the alleged publication of those statements, defendants have filed their answers to plaintiff's amended complaint without including such a claim and no explanation is offered for the delay. See Pl. Br. at 8. Proper justification for denying a motion to amend includes "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." See Foman v. Davis, 371 U.S. 178, 183 (1962). However, delay alone is insufficient justification; prejudice to the movant must also be shown. See Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690,

---

[9]Rule 13(a) provides in relevant part "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" In determining whether a claim "arises out of the transaction ... that is the subject matter of the opposing party's claim," the Second Circuit has generally taken a broad view and considering the "logical relationship" test. See United States v. Aquavella, 615 F.2d 12, 22 (2d Cir. 1980). Here, as explained above, Maxon's existing and proposed counterclaims are related to the claims that have been asserted against him by plaintiff. Further, the proposed counterclaims seek a declaratory judgment determining which parties are obligated to pay Maxon royalties under the October 21, 1998 agreement.

694 (8th Cir. 1981); see also Rachman, 46 F.3d at 235; State
Teachers, 654 F.2d at 856. Accordingly, although defendants'
defamation amendment may result in a delay, it will not unduly
prejudice plaintiff. Indeed, plaintiff has not set forth the exact
prejudice it will suffer if this defamation counterclaim is allowed
by the Court. Since the purpose of Rule 15 is to encourage
disposition of litigation on the merits, defendants' proposed
defamation counterclaim is permitted and the proposed counterclaim
defendant, Caton is added.[10]

## C.   Patent Invalidity and Unenforceability

Defendants contend that as part of the counterclaims that
presently exist, defendants have already alleged that the '767 and
'853 patens have been ruled invalid by the United States Court of
federal Claims. See Ex. C to Leclair's Decl., ¶¶ 21-29, pp. 69-71.
The fact that those two patents have been ruled invalid, were used
to induce defendants to enter into agreements with plaintiff's
predecessor, and are being prosecuted by plaintiff's lawsuit,
provides the basis of the presently pending First Counterclaim
based on the Sherman Act violation. See Ex. C pp. 144-145.

---

[10]Under Fed. R. Civ. P. 19(a), a person shall be joined as a party if "in the person's absence complete relief
cannot be accorded among those already parties" to the action. Because the Court has concluded that defendants'
proposed defamation supplemental counterclaim may be brought, then logically, Caton, the individual allegedly
involved in the defamatory statements, is a necessary party. See Fed. R. Civ. P. 19(a); see also Arkwright-Boston
Mfrs. Mutual Ins. Co. v. City of New York, 762 F.2d 205, 209 (2d Cir. 1985).

According to defendants, the new factual allegations set forth in the proposed Third Amended and Supplemental Counterclaims set forth in detail the manner in which plaintiff's patents are invalid or unenforceable for a number of reasons, including the failure to disclose to the USPTO considerable information that was material to the patentability of such patents.

Further, defendants assert that they are entitled to a declaratory judgment that they have not infringed plaintiff's patents because they have been threatened with infringement. The allegation is based on a July 12, 2006 letter from plaintiff's counsel to McTaggart. According to defendants, the letter alleges that defendants misappropriated and were infringing on one of plaintiff's patent applications, which also implicates the '083 patent. Defendants claim that there are various other circumstances justifying defendants' apprehension concerning plaintiff's claim of infringement. For instance, a review of public available information shows that plaintiff is prosecuting patent infringement actions against the European Central Bank, and may do so against security printers throughout Europe.

Plaintiff contends that there is no claim for patent infringement made in this action and neither has plaintiff threatened any patent infringement litigation against defendants.

According to plaintiff, the last of the patents that would be subject of defendants' invalidity attack was issued on April 7, 1998 and this lawsuit, which is based on the original complaint filed in January 2003, seeks enforcement against Adler and McTaggart of an agreement pursuant to which DSS' predecessor-in-interest licensed the technology embodied in the subject patents, together with certain trade secrets to Adler. This lawsuit, plaintiff claims, has always included the enforcement of that license agreement. In addition, all of the new factual matters to which defendants refer to in their proposed amended pleading are documents and events which are and have been matters of public record, to which defendants knew or should have known at the time of their filing of their previous pleadings in this action.

Plaintiff's argue that defendants' explanations of their apparent delay in seeking the amended pleadings is not reasonably justified. According to plaintiff, the portion of the testimony of David Wicker, consuming one page out of approximately 380 pages of deposition transcript is said to have prompted the defendants, for the first time, to challenge the validity of all of the subject DSS patents. The other argument upon which defendants rely on for the delay in asserting their proposed patent invalidity/ unenforceability counterclaim is the plaintiff's counsel's July 12,

2006 letter. As plaintiff's contend, contrary to defendants'
contentions, the letter makes no claim that defendants or any of
their licensees are infringing on any of the subject patents owned
by DSS. Instead, the letter informed McTaggart that certain
technologies, referred to in an Adler June 26, 2006 press release,
appropriated the subject matter of a DSS published patent
application no. WO 2006/029033 A2, and claimed this subject matter
as intellectual property of DSS. According to plaintiff, this
letter is unrelated to the DSS patents that are the subjects of
defendants' proposed invalidity/unenforceability counterclaims.

While courts should grant parties leave to amend pleadings
"when justice so requires," (see Fed. R. Civ. P. 15(a)), leave to
amend may be denied for reasons such as delay, bad faith or
dilatory motive of the movant and prejudice. See Foman, 371 U.S. at
182. In exercising this discretion, courts consider whether the
amendment will require the opposing party to expend significant
resources in discovery and whether resolution of the dispute will
be delayed. See Block v. First Blood Assoc., 988 F.2d 344, 350 (2d
Cir. 1993); Tokio Marine and Fire Ins. Co. v. Employers Ins. of
Wausau, 786 F.2d 101 (2d Cir. 1986); see also SEB S.A. v.
Montgomery Ward & Co., 2002 WL 31175244 at *4 (S.D.N.Y. 2002) (In
determining whether a party is prejudiced by the amendment, the

Court considers whether the addition of the proposed pleading would (a) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; or (b) significantly delay the resolution of the dispute). Further, although Rule 15 provides that leave to amend should be granted freely, it is within the sound discretion of the court whether to grant or deny leave to amend. See John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994).

The Court finds that plaintiff would be unduly prejudiced if the Court were to grant this aspect of the motion to amend. Granting this portion of defendants' motion to amend would not only require plaintiff to expend additional resources to conduct additional and substantial discovery but it would also delay the final disposition of this action. See Krumme v. Westpoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998) ("One of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action"). Here, the time for amendments as of right has long since expired. The proposed amendments at issue are not technical or corrective in nature and neither do they simply add additional theories based on facts already plead. Instead, they represent dramatic and substantive amendments that would

significantly delay this case, drastically change the course of this litigation and require the devotion of enormous additional resources to complete discovery and take the case to trial.

Further, plaintiff's complaint makes no claim for patent infringement. The last of the patents that would be the subject of defendants' invalidity attack was issued on April 7, 1998. This law suit, which was originally filed in January 2003, sought among other things, enforcement against Adler and McTaggart of an agreement pursuant to which DSS' predecessor-in-interest licensed the technology embodied in the subject patents, along with certain trade secrets, to Adler. Accordingly, against this background, all of the new factual matters to which defendants refer in their proposed amended pleadings are documents and events which are and have been matters of public record.[11] Moreover, defendants' assertions that the proposed new counterclaims concerning patent invalidity and/or unenforceability were the product of considerable investigation following David Wicker's deposition of March 7, 2007 and plaintiff's counsel's July 12, 2006 letter in which he claims defendants are infringing, are unavailing and unjustified. See Wade

---

[11]Defendants refer to prior litigation involving the '767 and '853 patents that took place between 1995 and 2002, and as reported in published Court decisions to which Defendants' Amendments make reference. The alleged material related to the patentability of the '767 and '853 patents, which defendants assert as bases for rendering these patents invalid, were also matters of public record in the prior litigation.

v. Knoxville Utils. Bd., 259 F.3d 452, 459 (6th Cir. 2001) ("When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier").

In addition to the lengthy, unexplained delay, the addition of the invalidity and/or unenforceability counterclaims based on facts that have not been at issue will result in lengthy delays and require an enormous amount of additional discovery. DSS will be put to the task of defending the validity and enforceability of several of its issued patents for the first time after four and a half years of litigation. Pre-trial testimony will necessarily need to be taken from individuals connected with the making of the applications for the subject patents, a detailed examination and analysis will need to be made of all the documents contained in the file histories for each patent, experts will need to be engaged by the plaintiff to support its defense of the patent invalidity and/or unenforceability counterclaims, and outside patent counsel will have to be engaged. Plaintiff has clearly shown that it would be unfairly prejudiced if required to respond to a distinct new claim of patent invalidity and/or unenforceability in this litigation. Plaintiff argues that they would be prejudiced because of the time, effort and money they would need to expend in

litigating the patent invalidity and/or unenforceability counterclaims. The Court finds that plaintiff would be substantially prejudiced. <u>See Strauss</u>, 704 F.2d at 47. Thus, defendants' motion to amend to include the patent related counterclaims (Counterclaims Nineteen, Twenty and Twenty-One) are denied in their entirety.[12]

## II.  **Declaratory Judgment Act**

The starting point for analyzing defendants' argument must be the Declaratory Judgment Act, which in accordance with Article III of the Constitution, requires an "actual controversy" before the Court "may declare the rights and other legal relations of any interested party seeking such declaration." <u>See</u> 28 U.S.C. § 2201(a). Until recently, courts used a two-pronged test to determine whether an "actual controversy" existed in patent declaratory-judgment actions. <u>See Sony Elecs., Inc. v. Guardian Media Techs., Ltd.</u>, 497 F.3d 1271, 1283 (Fed.Cir.2007). In order to prove an actual controversy, a plaintiff had to establish that (1) it had actually produced or was prepared to produce an allegedly infringing product and (2) the defendant's conduct created an

---

[12]Plaintiff also contends that the "futility" of defendants' proposed patent related counterclaims is another reason why the Court should deny defendants' motion. <u>See</u> Pls. Br. at 19. Because the court has concluded that plaintiff has properly demonstrated that it would be unfairly prejudiced if required to respond to counterclaims based on patent invalidity and/or unenforceability, the futility argument is moot. <u>See</u> State Teachers, 654 F.2d at 856 ("Reasons for a proper denial of leave to amend include delay, bad faith, futility of the amendment, and *perhaps most important, the resulting prejudice* to the opposing party.") (citing <u>Foman</u>, 371 U.S. at 182 ) (emphasis added).

objectively "reasonable apprehension" that the defendant would
initiate suit if the plaintiff continued the allegedly infringing
activity. See id.; Teva Pharms. USA, Inc. v. Novartis Pharms.
Corp., 482 F.3d 1330, 1334-36 (Fed.Cir.2007). However, the Supreme
Court rejected the "reasonable apprehension" test in favor of a
test focusing on the "totality of the circumstances." See
MedImmune, Inc. v. Genentech, Inc., 127 S.Ct. 764, 771, 774 n. 11
(2007); see also SanDisk Corp. v. STMicroelectronics, Inc., 480
F.3d 1372, 1380 (Fed.Cir.2007) (Following MedImmune, Federal
Circuit recognized that Supreme Court did not approve of its
reasonable-apprehension-of-suit test); Teva Pharms, 482 F.3d at
1340).

   In MedImmune, the Supreme Court noted that the Federal
Circuit's "reasonable apprehension of imminent suit" test
conflicted with several cases in which the Supreme Court had found
that a declaratory judgment plaintiff had a justiciable
controversy. See MedImmune, 127 S.Ct. at 774 n. 11. The Supreme
Court instructed that, although there is no bright-line rule for
distinguishing cases that satisfy the actual controversy
requirement from those that do not, all that is required is

        that the dispute be definite and concrete, touching the
        legal relations of parties having adverse legal
        interests; and that it be real and substantial and admit
        of specific relief through a decree of a conclusive

                                26

>character, as distinguished from an opinion advising what
>the law would be upon a hypothetical state of facts....
>Basically, the question in each case is whether the facts
>alleged, under all the circumstances, show that there is
>a substantial controversy, between parties having adverse
>legal interests, of sufficient immediacy and reality to
>warrant the issuance of a declaratory judgment.

Id. at 771-72 (internal citations and quotations omitted). The issue now is not whether the declaratory-judgment plaintiff has a "reasonable apprehension" of being sued, but rather "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." See id. at 771. For that question to be answered in the affirmative, the dispute between the parties must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and must further be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." See id. Accordingly, the Federal Circuit has discarded its "reasonable apprehension" requirement and adopted MedImmune's "all circumstances" test. See Teva Pharms, 482 F.3d at 1339 ("we follow MedImmune' s teaching to look at 'all the circumstances' ... to determine whether Teva has a justiciable Article III

controversy"); <u>see also</u> <u>SanDisk Corp.</u>, 480 F.3d at 1381 ("Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do").

The practical effect of <u>MedImmune</u> has been to "lower[ ] the bar for a plaintiff to bring a declaratory judgment action in a patent dispute." <u>See</u> <u>Frederick Goldman, Inc. v. West</u>, 2007 WL 1989291, at *3 (S.D.N.Y 2007). Despite the lower threshold in <u>MedImmune</u>, defendants are unable to prove that an actual controversy exists as to their invalidity and/or unenforceability claims. Defendants concede that there is no claim for patent infringement made in this current action and neither has DSS threatened any patent infringement litigation against defendants. Notwithstanding the lack of any claim of infringement in this legal action, defendants contend that they may seek declaratory relief because there is the "threat of patent infringement litigation." <u>See</u> Defs. Br. at 8. However, the only two sources from which defendants claim the threats emanate are from a portion of the testimony of David Wicker, consuming one page out of approximately 380 pages of deposition transcript. The other source upon which defendants rely on for their declaratory judgment claim is plaintiff's counsel's

July 12, 2006 letter. However, the letter makes no claim that defendants or any of their licensees are infringing on any of the subject patents owned by DSS. Instead, the letter informed McTaggart that certain technologies, referred to in an Adler June 26, 2006 press release, appropriated the subject matter of a DSS published patent application no. WO 2006/029033 A2, and claimed this subject matter as intellectual property of DSS. The letter is unrelated to the DSS patents that are the subjects of defendants' proposed invalidity/unenforceability counterclaims.

In addition, the fact that plaintiff is prosecuting patent infringement litigation against a European Central Bank does not supply a definite, concrete, real and substantial controversy between the parties to this action, which is of sufficient immediacy and reality to supply subject matter jurisdiction. In fact, defendants have not attempted to adequately explain how the claim of DSS in the European patent cases are related to the claims of the subject patents, which defendants seek to put in issue in this litigation. Consequently, there is no "substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." See MedImmune, Inc., 127 S.Ct. at 771.

Further, exercising jurisdiction under the Declaratory

Judgment Act is discretionary, and federal courts have unique and substantial discretion in deciding whether to declare the rights of litigants. <u>See</u> 28 U.S.C. § 2201 (2006) (stating that the Court "may" declare the rights of any interested party); <u>see</u> <u>also</u> <u>MedImmune</u>, 127 S.Ct. at 776 (observing that this statutory language "has long been understood to confer upon federal courts unique and substantial discretion in deciding whether to declare the rights of litigants" (internal quotation marks and citations omitted)). Accordingly, notwithstanding the resolution of defendants' jurisdictional challenge, even if the Court found subject matter jurisdiction, the Court recognizes that it retains the discretion under the Declaratory Judgment Act to forgo a ruling on defendants' proposed counterclaims relating to patent invalidity and/or unenforceability.

Even if subject matter jurisdiction exists over the proposed declaratory judgment counterclaims, the Court would decline to exercise jurisdiction over such counterclaims. <u>See</u> 28 U.S.C. § 2201(a). The Court would decline to exercise its discretionary power to decide these counterclaims for the reasons stated above and the reasons stated by the Court for denying the amendment under Fed. R. Civ. P. 13 and 15, where the parties have proceeded through extensive discovery, substantial delay will occur in this

litigation and the Court believes that plaintiff has demonstrated that it would be unfairly prejudiced if required to respond to a distinct new claim of patent invalidity and/or unenforceability in this litigation. See MedImmune, 127 S.Ct. at 777 (District courts may consider equitable, prudential, and policy arguments when deciding whether to use their discretion to dismiss a claim); see also Pub. Serv. Com. v. Wycoff Co., 344 U.S. 237, 243 (1952) (Courts must exercise caution in entertaining declaratory relief actions where rulings are sought that would reach far beyond the particular case).

For the reasons stated, defendants' motion to amend the counterclaims to assert causes of action for patent invalidity and/or unenforceability is denied.

### III. **Plaintiffs' Motion To Strike**

The Court has granted in part defendants' cross-motion to amend to include the following: Maxon's proposed Counterclaims Fourteen, Sixteen and Seventeen and has permitted the addition of proposed counterclaim defendants Thomas Wicker, Wicker Enterprises and the Estate of Wicker and to include defendants' proposed defamation counterclaim and has allowed the addition of proposed counterclaim defendant, Caton pursuant to Fed. R. Civ. P. 15 and 13. Granting these aspects of defendants' cross-motion to amend has

rendered moot plaintiff's motion to strike relating to these portions of the factual allegations underlying the amended affirmative defenses filed by defendants on July 9, 2007. Thus, those portions of the motion to strike are denied as moot. However, because the Court has denied the portion of defendants' cross-motion with respect to the patent related invalidity and/or unenforceability counterclaims, then the Court will briefly address this issue.

Plaintiff argues that under Rule 15(a) defendants require leave of Court before serving their amended Answers and as a result their amended Answers should be stricken. See Pls. Br. at 7; see also Fed. R. Civ. P. 15(a) (A party may amend its pleading once as a matter of right before a responsive pleading is served or, if no responsive pleading is permitted, within twenty days after the pleading is served; after that point, absent written consent from the opposing party, leave to amend must be obtained from the district court). Defendants counter by citing to a 1949 district of Ohio case, which held that since the defendant's reply was responsive only to the counterclaim and no responsive pleading is permitted to the answer, defendant could amend the non-counterclaim portion of [its] answer without leave of court at any time within 20 days after it had been served. See Defs. Br. at 14-15; see also

<u>Bruner v. Rop-Loc Prods. Co.</u>, 9 F.R.D. 208 (N.D. Ohio 1949).

The Court finds that pursuant to Rule 15(a), a party's right to amend a pleading without leave of court is cut off by the service of a responsive pleading. Accordingly, the time limit for amending a pleading without leave of Court or consent is tied to the time of the service of the responsive pleading. <u>See Bernstein v. IDT Corp.</u>, 582 F.Supp. 1079, 1088 (D. Del. 1984). In this case, plaintiff has served its responsive pleadings to the answers of the defendants. It was only subsequent to receiving the responsive pleadings that the defendants filed and served the amended Answers containing the additional allegations relating to patent invalidity and/or unenforceability. Thus, the amended Answers, which concern the patent related claims are stricken since they were filed without the required leave of Court contrary to Fed. R. Civ. P. 15(a).

Defendants argue that in the event that the Court finds that the filing of plaintiff's reply on July 9, 2007 terminated defendants' right to amend their answer, defendants seek leave pursuant to their cross-motion to amend their Answer *nunc pro tunc*. For the reasons stated by the Court in Points I(C) and Point II of this Decision and Order, the Court will exercise its discretion to strike the amended Answers relating to the invalidity and/or unenforceability claims pursuant to Fed. R. Civ. P. 12(f).

Therefore, the portions of defendants' amended Answer relating to patent invalidity and/or unenforceability are stricken and plaintiff's motion to strike this portion of defendants' amended Answer is granted.

<strong><u>CONCLUSION</u></strong>

For the reasons stated above, Defendants' motion to Amend the pleadings is granted in part and denied in part and plaintiff's motion to Strike Defendants' amended Answers are denied in part as moot and granted in part. The Court therefore finds the following: (1) defendants' cross-motion to amend to include defendant Maxon's proposed Counterclaims Fourteen, Sixteen and Seventeen is granted and the addition of proposed counterclaim defendants Thomas Wicker, Wicker Enterprises and the Estate of Wicker is granted for proposed Counterclaims Thirteen, Fourteen, Fifteen, Sixteen and Seventeen; (2) defendants' cross-motion to amend to include defendants' proposed defamation counterclaim (Counterclaim Eighteen) is granted and the addition of proposed counterclaim defendant, Caton is granted; (3) defendants' cross-motion to amend the counterclaims to assert causes of action for patent invalidity and/or unenforceability (Counterclaims Nineteen, Twenty and Twenty-One) is denied; (4) granting aspects of defendants' cross-motion to amend relating to Counterclaims Fourteen, Sixteen and Seventeen and Eighteen has rendered moot plaintiff's motion to strike relating to

these portions of the factual allegations underlying the amended affirmative defenses filed by defendants on July 9, 2007, as such, those portions of the motion to strike are denied as moot; (5) plaintiff's motion to strike as it relates to the patent related claims of invalidity and/or unenforceability are granted and thus stricken.

**ALL OF THE ABOVE IS SO ORDERED.**


                                        s/Michael A. Telesca

                                        Michael A. Telesca

                                        United States District Judge

Dated: February 29, 2008

       Rochester, New York